UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GRACE CAMPBELL,

    Plaintiff,

v.

CATHOLIC COMMUNITY SERVICES
OF WESTERN WASHINGTON,

    Defendant.

Case No. C10-1579RSL

ORDER GRANTING IN PART
DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT

This matter comes before the Court on Defendant's Motion for Summary Judgment (Dkt. # 33). Defendant argues that no genuine issue of material fact exists as to whether Plaintiff was discharged on account of her status in the National Guard in violation of the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. §§ 4301–33, or Washington's "Law Against Discrimination," RCW chapter 49.60. Alternatively, Defendant argues that Plaintiff is not entitled to punitive damages and asks the Court to dismiss her request.

After reviewing the parties' papers, the Court finds that there are triable issues of fact as to whether Defendant discharged Plaintiff in violation of either USERRA or RCW 49.60.180. Plaintiff has presented more than enough direct and circumstantial evidence to allow a reasonable juror to conclude in her favor. The Court does find, however, that neither statute authorizes punitive damages and therefore dismisses Plaintiff's request for punitive damages.

ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

## I. BACKGROUND

This case concerns Defendant's March 20, 2008 firing of Plaintiff—a more than 20-year member of the National Guard. Defendant is a non-profit organization that contracts with the state of Washington to provide certain case management services to vulnerable adults, among others, across Western Washington. Mot. (Dkt. # 33) at 2. Plaintiff had worked for Plaintiff since 1997. Mot. (Dkt. # 35) at 2. Most recently, she worked as a lead supervisor in Defendant's long care term division, working out of Defendant's Everett office. Id.

According to Plaintiff, her situation at work began to deteriorate in late 2006 after she returned from a month-long deployment in Yuma, Arizona. Campbell Decl. (Dkt. # 43) at ¶¶ 8–9. She alleges that her co-workers began to harass her on account of her military status, blaming her for the added stress and responsibilities that her absence caused. Id. She also alleges that her direct supervisor, Lynn Joebgen, told her that her work was her "primary job" and more important than her military service. Id. at ¶ 9. Allegedly, Joebgen also told her that she had heard that Plaintiff's deployment had been voluntary and threatened to go to human resources "about [Plaintiff's] job." Id.

Also around that time, Joebgen and another supervisor, Mary Hatch, met with Plaintiff to discuss her job performance. Id. at ¶ 11. Plaintiff said they told her that she had fallen behind on her work—a fact she did not find surprising given that she had been gone for 30 days—and gave her 30 days to "catch up." Id. The situation further deteriorated to the point that, at Plaintiff's request, an officer from the office of Employer Support of the Guard and Reserve met with Plaintiff and her supervisors to discuss the situation and explain Defendant's responsibilities under federal law. Id. at ¶ 10, 12.

Following that meeting, Defendant transferred Joebgen to a different office and assigned another supervisor, Carol Krula, to Plaintiff's office. Id. at ¶ 14. According to Plaintiff, Krula took efforts to stop others in the office from continuing to harass her. Id.

ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2

Those efforts ceased, however, when Becky Fager replaced Krula. See id. at ¶ 14–17. Fager was apparently dismissive of Plaintiff and began to deny her leave to participate in some of her Guard activities. See id.

In October 2007, Plaintiff discovered that she might be deployed to Iraq for a year. Id. at ¶ 19. She shared her expectation with a few people in her office, including a human relations manager who reported to Hatch. Id. According to Plaintiff, news of her upcoming deployment was well known around the office by the time Hatch, Fager, and another supervisor made the decision to terminate her on March 31, 2008. See id. at ¶ 19. She believes that Hatch and Fager's knowledge of that fact, coupled with her ongoing conflict with several co-workers about her military service, led to her firing. Id. at ¶ 20. Defendant denies that allegation. It states that Plaintiff had on-going performance issues and a history of defensive behavior, poor written communication, and tardiness. Mot. (Dkt. # 33) at 3. Moreover, it notes that Plaintiff violated company policy when she allegedly carried a copy of Defendant's master client list in her "on-call book." Id. at 3–4. This was apparently the straw that broke the camel's back.

Plaintiff was deployed to Iraq shortly thereafter. She returned after a one-year tour and filed this suit. In her complaint, she alleged that Defendant violated her rights under USERRA and RCW 49.60.180 when it terminated her employment. Complaint (Dkt. # 1) at ¶¶ 4.1–5.6. She also asserts that it violated her USERRA rights both by retaliating against her for seeking to enforce her rights and by failing to provide "Plaintiff with [a workplace] free from discrimination and retaliation."[1] Id. at ¶¶ 4.3–4.4. Finally, she asserts a nebulous public policy claim that this Court might construe as a Title VII claim if not for her specific disclaimer. Compare id. at ¶¶ 6.1–6.7, with Dkt. # 46 at 6.

---

[1] This language plainly rebuts Defendant's assertion that Plaintiff never alleged "a claim of workplace harassment under USERRA" in her complaint. Reply (Dkt. # 48) at 7.

ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3

## II. DISCUSSION

Defendant argues two points: First, that no reasonable juror could conclude that Defendant fired Plaintiff on account of her military status, thereby precluding any liability under USERRA and RCW 49.60.180. See Wallace v. City of San Diego, 479 F.3d 616, 625 (9th Cir. 2007); Becker v. Wash. State Univ., 266 P.3d 893, 902 (Wash. Ct. App. 2011). And second, that Plaintiff has not stated a claim for which she is entitled to punitive damages. After describing the controlling summary judgment standard, the Court considers each argument in turn.

### A. Summary Judgment Standard

The Court may grant Defendant's motion only if it is satisfied that there is no genuine issue of material fact and that judgment is therefore appropriate as a matter of law. Fed. R. Civ. P. 56(c). As the moving party, Defendant bears the initial burden of informing the Court of the basis for summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). It must prove each and every element of his claims or defenses such that "no reasonable jury could find otherwise." Eli Lilly & Co. v. Barr Labs., Inc., 251 F.3d 955, 962 (Fed. Cir. 2001); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986) ("If the defendant in a run-of-the-mill civil case moves for summary judgment . . . based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented."). Only once it makes that initial showing does the burden shift to the nonmoving party to show by affidavits, depositions, answers to interrogatories, admissions, or other evidence that summary judgment is not warranted because a genuine issue of material fact exists. Celotex, 477 U.S. at 324.

Notably, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at

247–48 (emphasis omitted). To be material, the fact must be one that bears on the outcome of the case. And a genuine issue exists only if the evidence is such that a reasonable trier of fact could resolve the dispute in favor of the nonmoving party. Id. at 249. "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." Id. at 249–50. In reviewing the evidence "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods. Inc., 530 U.S. 133, 150 (2000).

**B. Analysis**

    **1. Genuine Issue as to Defendant's Motivation**

Defendant contends first that no genuine issue of material fact exists as to whether it terminated Plaintiff on account of her military status and asks the Court to to enter judgment of a matter of law in its favor on Plaintiff's USERRA or RCW 49.60.180 claims. Because the Court concludes that genuine issues of material fact do exist, the Court DENIES Defendant's request.[2]

Under USERRA, "the employee first has the burden of showing, by a preponderance of the evidence, that his or her protected status was 'a substantial or motivating factor in the adverse [employment] action;' the employer may then avoid liability only by showing, as an affirmative defense, that the employer would have taken

---

[2] To be clear, the Court expresses no opinion in this Order as to whether Plaintiff may bring a hostile work environment claim under USERRA as a matter of law. See Church v. City of Reno, 168 F.3d 498, at *1 (9th Cir. 1999) (unpublished memorandum decision) (noting that "neither the Ninth Circuit nor the U.S. Supreme Court has interpreted . . . USERRA . . . to create liability for a hostile work environment). Compare Carder v. Cont'l Airlines, Inc., 636 F.3d 172, 175 (5th Cir. 2011) (concluding that hostile work environment claim is not cognizable under USERRA), with Petersen v. Dep't of Interior, 71 M.S.P.R. 227, 237 (M.S.P.B. 1996) ("Although the appellant's hostile environment claim does not clearly fall within the term 'benefit,' we are persuaded that an 'expansive interpretation' of that term, as intended by Congress, leads to the conclusion that it does."), Dees v. Hyundai Motor Mfg. Ala., LLC, 605 F. Supp. 2d 1220, 1227–28 (M.D. Ala. 2009) ("An assurance that employees cannot be fired on account of their military service is meaningless without assurance that the work environment will not be so intolerable that they will feel forced to quit."), and Wallace, 479 F.3d at 625–30 (permitting plaintiff to pursue USERRA claim for constructive discharge).

the same action without regard to the employee's protected status." Wallace, 479 F.3d at 625 (citations and internal quotations marks omitted). Similarly, under RCW 49.60.180, "[t]he employee has the initial burden of presenting a prima facie case of . . . discrimination." Becker, 266 P.3d at 902. "Once the employee establishes a prima facie case of . . . discrimination, the burden of production shifts to the employer, who must show a legitimate, nondiscriminatory reason for its conduct. If the employer meets its burden of production, the employee must then show the employer's proffered reason was mere pretext for discrimination." Id. (citations omitted).

In this case, Defendant has not met its threshold burden of convincing the Court that "no reasonable jury could find" that Plaintiff has not presented sufficient evidence to satisfy her initial burdens under either statute. See Celotex, 477 U.S. at 323. To the contrary, a great deal of evidence has been presented, including Plaintiff's own description of the hostility she experienced from her co-employees and some of her supervisors and the fact that an officer the office of Employer Support of the Guard and Reserve felt concerned enough to come speak with her supervisors, from which a reasonable jury could find that Plaintiff's military status "was 'a substantial or motivating factor in the adverse [employment] action.'" See Wallace, 479 F.3d at 625; accord Becker, 266 P.3d at 902 ("To establish a prima facie case of . . . discrimination in employment, the employee must show: (1) she was within the statutorily protected . . . group of employees . . . , (2) she was discharged, (3) she was doing satisfactory work, and (4) she was replaced by a . . . person [not within the protected group].").

Though Defendant understandably disagrees with the bulk of this evidence, its arguments are by no means conclusive. See, e.g., Mot. (Dkt. # 33) at 10 (arguing that "Mary Hatch, Peter Nazzal, and Rebecca Fager . . . made the decision to terminate plaintiff's employment based upon her prior history and her undisputed violation of defined and critical policy, and there is no evidence that they harbored animus toward

plaintiff based upon her military status"). Rather, the conflict between the parties' arguments and evidence is precisely the sort of genuine issue that can be resolved only by the trier of fact—in this case the jury. Leisek v. Brightwood Corp., 278 F.3d 895, 899–900 (9th Cir. 2002) ("Under USERRA, discriminatory motivation of the employer may be reasonably inferred from a variety of factors, including <u>proximity in time between the employee's military activity and the adverse employment action</u>, inconsistencies between proffered reason and other actions of the employer, <u>an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity</u>, and disparate treatment of certain employees compared to other employees with similar work records or offenses." (emphasis added)); see Wallace, 479 F.3d at 627 (concluding that a jury could conclude that an employers action were motivated by the plaintiff's military status even though his "working conditions had improved somewhat in the time period immediately preceding his resignation, . . . there had been a delay between the time of the last overt discriminatory action to which he had been subjected and his resignation[,] and . . . the event immediately precipitating his resignation was unrelated to his military service or to any discriminatory action").

The same is true of the second element of both USERRA and RCW 49.60.180: whether Defendant had a "legitimate, nondiscriminatory reason" for terminating Plaintiff. Becker, 266 P.3d at 902; accord Wallace, 479 F.3d at 625. Again, while Defendant provides a valid, nondiscriminatory reason—"her prior history and her undisputed violation of defined and critical policy," Mot. (Dkt. # 33) at 10—this rationale and the evidence supporting are far from uncontroverted. Leisek, 278 F.3d at 900. For example, Defendant apparently did not discipline other employees who violated the same list policy it purportedly relied upon to fire Plaintiff. See Campbell Decl. (Dkt. # 43) at 93–94. And, even assuming a violation, Defendant skipped over many of the intermediate disciplinary steps it could have taken under its own corrective

action policy in favor of firing Plaintiff. Hatch Decl. (Dkt. # 34-10) at 7. It will fall upon the jury to listen to the testimony, review the evidence, and make the ultimate determination as to whether Defendant's given reason for firing Plaintiff was valid and not merely pretextual. See Anderson, 477 U.S. at 252; Becker, 266 P.3d at 902–03 ("A court may grant summary judgment when the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." (citations and internal quotation marks omitted)).

### 2. Punitive Damages

Next, Defendant contends that neither USERRA nor RCW 49.60.180 permit Plaintiff to recover punitive damages in this matter and that the Court should therefore dismiss Plaintiff's request. The Court agrees.

"USERRA provides a comprehensive remedial scheme to ensure the employment and reemployment rights of those called upon to serve in the armed forces of the United States." Morris-Hayes v. Bd. of Educ. of Chester Union Free Sch. Dist., 423 F.3d 153, 160 (2d Cir. 2005). That scheme allows Plaintiff to obtain injunctive relief and to recover compensatory damages in the nature of lost wages and benefits, as well as liquidated damages. 38 U.S.C. § 4323(d); 20 C.F.R. § 1002.312(b) ("The court may require the employer to pay the individual an amount equal to the amount of lost wages and benefits as liquidated damages, if the court determines that the employer's failure to comply with the Act was willful. A violation shall be considered to be willful if the employer either knew or showed reckless disregard for whether its conduct was prohibited by the Act."). However, it does not provide for punitive damages in the traditional sense. See 38 U.S.C. § 4323(d). But see Opp. (Dkt. # 42) at 22–23 (arguing that USERRA's liquidated damages are punitive in nature).

ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 8

Washington's "Law Against Discrimination," RCW chapter 49.60, is no different. <u>Bunch v. King Cnty. Dep't of Youth Servs.</u>, 155 Wn.2d 165, 182 (2005). It "allows recovery only for 'actual damages,' RCW 49.60.030(2)"; "punitive damages are forbidden." <u>Id.</u> (citation omitted)). Moreover, Plaintiff has conceded that she is not seeking relief under Title VII. Dkt. # 46 at 6.

In sum, because none of the causes of action upon which Plaintiff claim to rely provide for punitive damages, the Court DISMISSES Plaintiff's request. While Plaintiff will be entitled to argue to the jury that she is entitled to liquidated damages under USERRA, she will not be permitted to argue for general punitive damages.

### III. CONCLUSION

For all of the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Defendant's motion. Genuine issues of material fact exist and preclude the Court from entering judgment as a matter of law on Plaintiff's USERRA and RCW 49.60.180 claims. The Court does dismiss, however, Plaintiff's request for punitive damages.

DATED this 22nd day of February, 2012.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9