THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GRACE CAMPBELL,<br><br>Plaintiff,<br><br>v.<br><br>CATHOLIC COMMUNITY SERVICES OF WESTERN WASHINGTON,<br><br>Defendant. | CASE NO. C10-1579-JCC<br><br>ORDER |

This matter comes before the Court on Plaintiff's motion for award of fees, litigation expenses, and an amount to offset adverse tax consequences (Dkt. No. 97). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary, and, for the reasons explained herein, AWARDS Plaintiff a total of $457,252.26 in attorneys' fees, expenses, and tax offset funds.

**I.    BACKGROUND**

On October 1, 2010, Plaintiff Grace Campbell brought this discrimination suit against Defendant Catholic Community Services of Western Washington ("CCS") in federal court on the basis of federal question jurisdiction. (Dkt. No. 1.) Plaintiff's federal claims arose under the Uniformed Services Employment and Reemployment Rights Act ("USERRA"). Plaintiff's supplemental state claims arose under the Washington Law Against Discrimination ("WLAD"). (*Id.*) Plaintiff retained counsel in March of 2008, who represented her on a contingency basis

over the next four years, through employment securities proceedings, pre-filing settlement negotiation, the pleadings stage, a lengthy discovery stage, summary judgment motions on both sides, motions in limine, and, ultimately, trial itself. (Dkt. No. 97 at 2-3.) On April 30, 2012, the jury returned a verdict in Plaintiff's favor, finding that Defendant discriminated against Plaintiff and subjected her to a hostile work environment in violation of both federal and state law. (Dkt. No. 96.) The jury awarded total damages of $485,000. (*Id*.) On May 3, 2012, this Court entered judgment in favor of Plaintiff. (Dkt. No. 96.)

On May 17, 2012, Plaintiff moved for recovery of the costs of her suit in the amount of $516,413.71 plus any additional costs expended during post-trial motion practice. (Dkt. No. 97.) Plaintiff also requested $14,482.00 as an offset to the adverse tax consequences of the award. (Dkt. No. 97.) Plaintiff calculated the amount of $516,413.71 as follows: (1) attorneys' fees incurred through May 2, 2012, in the amount of $318,862.50; (2) attorneys' fees incurred for work from May 3, 2012 to May 16, 2012, in the amount of $12,527.50; (3) pursuant to Washington law, a multiplier of 1.5 on attorneys' fees performed before judgment was entered in the amount of $159,431.25; and (4) litigation expenses, including interest, through May 16, 2012 of $25,592.26. (Dkt. No. 97-1 at 6.)

Defendant objected to the amount that Plaintiff requested, raising fourteen total objections, and arguing that a reasonable recovery would be around $203,000. (Dkt. No. 102.) Defendant also moved for judgment notwithstanding the verdict on several issues. (Dkt. No. 104.)

Plaintiff subsequently requested $8,430 in attorneys' fees incurred in preparing the reply brief on the fees motion (Dkt. No. 108), $7,277.50 in attorneys' fees incurred in responding to Defendant's motion for judgment notwithstanding the verdict (Dkt. No. 116), and $1,033.60 in litigation costs incurred during the post-trial motions briefing (Dkt. No. 116).

ORDER
PAGE - 2

## II. DISCUSSION

### A. Relevant Law

A district court has discretion in determining the amount of a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). However, "[t]he district court must provide a concise and clear explanation of its reasons for the fee award." *Id*.

38 U.S.C. § 4323(h)(2) provides for a discretionary award of attorneys' fees to a prevailing plaintiff in an action to enforce a right under USERRA. *See also* 20 CFR § 1002.310 ("If an individual obtains private counsel for any action or proceeding to enforce a provision of [USERRA], and prevails, the court may award reasonable attorney fees, expert witness fees, and other litigation expenses."); *Serricchio v. Wachovia Securities, LLC*, 606 F.Supp.2d 256, 267 (D. Conn. 2009); *Fryer v. A.S.A.P. Fire and Safety Corp., Inc.*, 758 F.Supp.2d 29, 35 (D. Mass. 2010). Similarly, RCW 49.60.030(2) provides that a plaintiff prevailing under a WLAD claim is entitled to recover "the cost of suit including reasonable attorneys' fees." *See also Broyles v. Thurston County*, 195 P.3d 985, 1004 (Wash. App. Div. 2008) ("Successful plaintiffs under the WLAD are entitled to recover their attorney fees and costs incurred in pursuing their claims.").

When awarding reasonable attorneys' fees pursuant to "fee-shifting statutes," the district court must balance between granting sufficient fees to attract qualified counsel to litigate, *see City of Riverside v. Rivera*, 477 U.S. 561, 579-80 (1986), and avoiding a windfall to counsel when they succeed, *see Blum v. Stenson*, 465 U.S. 886, 897 (1984). The burden falls on the plaintiff to demonstrate the amount of attorney fees and costs to which he or she is reasonably entitled. *See Gisbrecht v. Barnhart*, 535 U.S. 789, 807 (2002); *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007) ("The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked."). The plaintiff must "exercise 'billing judgment' with respect to hours worked . . . and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Hensley*, 461 U.S. at 437.

The "lodestar" figure is considered the "guiding light" of fee-shifting jurisprudence. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). In order to determine the lodestar figure, the court calculates "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. The court excludes from this initial fee calculation hours that were not reasonably expended. *Id*. at 434 ("Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority.") (emphasis in original).

There is a "strong presumption" that the lodestar figure represents the reasonable fee award. *Dague*, 505 U.S. at 562. However, the court may, if circumstances warrant, adjust the lodestar upward or downward using a "multiplier" based on factors not subsumed in the initial calculation of the lodestar. *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000); *Chuong Van Pham v. City of Seattle*, 151 P.3d 976, 982 (Wash. 2007). The fee applicant who seeks more than the lodestar figure has the burden of showing that an adjustment is "*necessary* to the determination of a reasonable fee." *Dague*, 505 U.S. at 562 (emphasis in original); *see also Chuong Van Pham*, 151 P.3d at 982 ("The party requesting a deviation from the lodestar bears the burden of justifying it.").

**B.    Defendant's Objections to Plaintiff's Requests**

Defendant CCS raises fourteen total reductions to Plaintiff's calculation of reasonable attorneys' fees and expenses. Defendant challenges the following: (1) the rates due to attorneys, (2) the use of a multiplier, (3) the number of hours billed, (4) the purported use of "block-billing," (5) billing for clerical work, (6) billing for intra-office communications, (7) duplication of work between two partners on the case, (8) billing for pre-filing work, (9) billing for the costs of effecting service, (10) billing for time spent conducting a mock trial, (11) billing for associate time, (12) Westlaw billing, (13) the availability of fee recovery under USERRA, and (14) fees on fees. According to Defendant, a reasonable award would be closer to $200,000 as opposed to over $500,000, as Plaintiff requests. The Court now addresses Defendant's objections in turn.

### 1. Rates

At issue are the rates at which Plaintiff's counsel billed the hours worked on this case. Plaintiff asks for a rate of $350/hour or $325/hour for partners, $250/hour or $225/hour for associates, and $125/hour for support staff. Defendant claims that these rates are clearly unreasonable and suggests a rate of $200/hour for partners, $160/hour for associates, and $100/hour for support staff.

To determine a reasonable billing rate, the Court generally looks to "the forum in which the district court sits." *Camacho v. Bridgeport Fin.*, Inc., 523 F.3d 973, 979 (9th Cir. 2008). The presumptive reasonable hourly rate for an attorney is the rate the attorney charges. *Broyles v. Thurston County*, 195 P.3d 985, 1004 (Wash. Ct. App. 2008). The reasonable geographic area for purposes of determining a reasonable hourly rate for Plaintiffs' counsel is the entire Puget Sound region. *Id*.

Here, the rates requested by Plaintiff are consistent with the rates requested by other lawyers within the Puget Sound area. Indeed, in a recent case in the Western District of Washington, the court approved similar rates: $375/hour for partners, $250/hour for associates, and $120/hour for paralegals and other staff. *See United States ex rel. Marchese v. Cell Therapeutics Inc.*, No. C06-168-MJP, 2008 U.S. Dist. LEXIS 97163, *5 (W.D. Wash. Nov. 8, 2008). Plaintiff's partner rates are also supported by 2008 data from the National Law Journal, showing that three Seattle firms (Davis Wright Tremaine, Lane Powell, and Perkins Coie) have average hourly partner rates of $455, $405, and $498 respectively. *A Nationwide Sampling of Law Firm Billing Rates*, Nat'l L. J. (Dec. 8, 2008). The Court finds that the hourly rates requested by Plaintiff are reasonable.

### 2. Multiplier

At issue is whether Plaintiff is entitled to a multiplier—i.e., an upward adjustment to the lodestar amount. Plaintiff argues that a 1.5 multiplier is appropriate for the work performed through judgment because of (1) the contingent nature of success and (2) the quality of work

1  performed. (Dkt. No. 97 at 2.) In response, Defendant contends that multipliers are the rare
2  exception, not the rule, and that a multiplier is not appropriate here because Plaintiff has not
3  established that this is one of those exceptional cases where the lodestar rate does not sufficiently
4  account for the high risk nature of the case or the quality of the work performed. (Dkt. No. 102 at
5  5.)
6        Federal and Washington courts diverge on the question of whether the lodestar amount
7  can be enhanced to account for the fact that a prevailing party's counsel undertook the case on a
8  contingent basis. The Washington Supreme Court, on the one hand, has indicated that "the
9  contingent nature of success" may be taken into account when considering upward adjustments
10 to the lodestar. *See Chuong Van Pham*, 151 P.3d at 982-83. The United States Supreme Court,
11 on the other hand, has found that the contingent nature of a case is not an appropriate basis for an
12 upward enhancement of the lodestar amount in cases involving federal fee-shifting statutes. *See*
13 *Dague*, 505 U.S. at 566-67 (indicating that the contingent nature of the cases is reflected in the
14 lodestar amount).
15       With respect to the quality of counsel factor, federal courts have made clear that it is
16 impermissible to use a multiplier to adjust the lodestar fee for quality of representation, absent
17 exceptional circumstances. *See Blum*, 465 U.S. at 899. Such an adjustment is justified only in the
18 rare case where there is specific evidence that the quality of service was superior in light of the
19 hourly rates charged and the success was exceptional. *Id.*; *see also Pennsylvania v. Delaware*
20 *Valley Citizens' Council for Clean Air*, 478 U.S. 546, 567-68 (1986).
21       Here, the Court cannot accept Plaintiff's contention that the lodestar amount should be
22 increased on account of the quality of counsel in this case. While Plaintiff's counsel are highly
23 skilled and achieved an excellent outcome for Plaintiff, the quality of representation is duly
24 reflected in the product of the reasonable numbers of hours multiplied by counsel's substantial
25 hourly fees. The Court is, however, persuaded that the contingent nature of success in this matter
26 may provide a basis for an upward adjustment to the lodestar amount. The claims in this suit

required a great deal of lawyer and staff time, and undertaking representation of Plaintiff impacted the ability of counsel to work on other matters and constituted a significant risk to counsel's law firm if it did not recover fees.

As discussed above, federal law does not allow a court to award a multiplier on account of a contingency arrangement, and the Court accordingly finds that it may not award a multiplier on that basis with respect to work attributable to Plaintiff's federal law claims. However, the Court will award a 1.5 multiplier with respect to Plaintiff's state law claims to account for the contingent nature of success.

Given that federal and Washington state anti-discrimination law is very similar, and given that Plaintiff's state law claims were closely analogous to her federal law claims, the Court finds that half of the attorneys' fees requested by Plaintiff can be reasonably attributed to work on her state law claims. Therefore, the Court will award a 1.5 multiplier on half of the reasonable attorneys' fees incurred prior to entry of judgment on May 3, 2012.

As indicated below, the amount of reasonable attorneys' fees incurred before May 3, 2012 is $310,387.50. Half of that amount is $155,193.80. Thus, the multiplier amount that the Court awards is $77,596.88.

### 3. Number of Hours

At issue is whether Plaintiff's fee application should be reduced for unwarranted billing. A court may reduce the number of hours awarded where the prevailing party requests hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. However, as the Ninth Circuit has observed:

> It must also be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee. By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker.

*Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

ORDER
PAGE - 7

The Court is not convinced by Defendant's objections to the amount of time billed in this case. To give an example, Defendant contends that Plaintiff's counsel overbilled for time spent waiting for the jury's verdict when "[p]resumably counsel were at their Seattle office working on something else." (Dkt. No. 102 at 5.) However, it is not uncommon or unreasonable for lawyers to stay with their client to await a jury verdict, particularly, as here, where those lawyers have been instructed by the Court to stay within 15 minutes of the courthouse during jury deliberations. Plaintiff's lawyers were indeed present in the courthouse and were seen by multiple courtroom officials. Similarly unavailing is Defendant's challenge to the amount of time that Plaintiff's counsel spent on service of process. Any inefficiencies in the work regarding service of process was caused at least in part if not wholly by CCS's refusal to accept service through counsel, as the parties had initially agreed. (*See* Dkt. No. 16 at 2.) The other objections advanced by Defendant are equally feeble, or, at best, raise debatable questions of how best to staff a case.

Given the quality of Plaintiff's lawyers and the excellent result that they obtained for Plaintiff, the Court will defer to their professional judgment as to how much time they needed to spend on the case.

### 4. "Block Billing"

At issue is whether the hours requested by Plaintiff should be reduced on account of purported block billing by Plaintiff's counsel. It is well-established that the fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked. *See Welch*, 480 F.3d at 948. However, the work that Defendant characterizes as "pervasive block billing" in this case is unfairly characterized. Plaintiff's lawyers have submitted a very detailed list of all work done on Plaintiff's case since 2008. Most of the items on the list are under an hour. When the time does elapse more than one hour, counsel usually identifies two or three different tasks that were accomplished in that particular span of time, which is common in private practice. For an example of what Defendant

believes to be improper "block billing," see Dkt. No. 103-2 at 20, which reflects 2.3 hours of billing by Plaintiff's counsel, James Beck, for the following:

> Edits to plaintiff's motion for summary judgment; research on federal mitigation of damages standard and drafting section on same. Locating citations for statute of limitations issue and 12b issue. Review changes requested to brief. Review proposed order and changes to same.

This entry is not "block billing" in the negative sense of the term as it covers a relatively limited amount of time and gives sufficient information for the Court to assess the nature of the work done. Furthermore, lawyers are not required to record in great detail how each minute of their time is spent on a case; rather, they must only provide enough evidence to show that the effort expended during those hours was reasonable. *See Secalt S.A. v. Wuxi Shenxi Constr. Mach. Co.*, 668 F.3d 677, 690 (9th Cir. 2012). In this case, the Court will not reduce the number of hours for block billing.

### 5. Clerical Work

Defendant argues that the amount of hours billed by Desiree Williams, a paralegal for Plaintiff's firm, should be reduced to account for the clerical nature of many of the tasks she performed. Defendant is correct that "purely clerical or secretarial tasks should not be billed at a paralegal [or lawyer's] rate, regardless of who performs them." *Davis v. City & County of San Francisco*, 976 F.2d 1536, 1543 (9th Cir. 1992). "When clerical tasks are billed at hourly rates, the court should reduce the hours requested to account for the billing errors." *See Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009). It is apparent from the billing records that a portion of Ms. Williams's time through May 17, 2012 was spent on clerical tasks but was still billed out at her $125/hour paralegal rate. The Court will reduce Ms. Williams's billed hours for the period through May 17, 2012 by 30 percent to account for this billing error. Accordingly, the amount of recoverable time expended by Ms. Williams is 158 hours for the period through May 2, 2012 and 1.3 hours for the period from May 3, 2012 to May 17, 2012.

### 6. Intra-Office Communications

Defendant makes a bald accusation that Plaintiff's counsel's bills are "stuffed" with intra-office meetings, conferences and phone calls and argues that the attorneys' fees award should be reduced to account for this excessive billing. (Dkt. No. 102 at 7.) The Court disagrees. The number of billing entries for intra-office communications that Defendant identified are far from excessive in light of the four years this case took to resolve. Furthermore, collaborating with others and jointly formulating legal theories is an intrinsic part of litigation success. Defendant's proposed reduction is meritless.

### 7. Duplication of Work Between Two Partners

Plaintiff had two partners working on this case. Defendant requests that the Court reduce both partners' hours by ten percent because of "inefficient overlap and duplication." (Dkt. No. 102 at 7.) However, Defendant does not cite to any particular billing entries that it believes reflect unnecessarily duplicative work. Furthermore, a district court "may not set the fee based on speculation as to how other firms would have staffed the case." *Moreno*, 534 F.3d at 1114. This proposed reduction is rejected.

### 8. Pre-Filing Work

Defendant petitions the Court to disallow recovery for the time Plaintiff's counsel spent representing Plaintiff during her unemployment securities process before the formal complaint in this matter was filed. (Dkt. No. 102 at 8.) However, the Court finds that this representation was reasonably related to the merits of this case and that the time spent by Plaintiff's counsel is recoverable. In this respect, the Court notes that the relevance of the unemployment compensation matter is demonstrated by the fact that Defendant sought to use the unemployment benefit orders at trial. (*See* Dkt. No. 108 at 15.)

### 9. Service of Process

The Court finds that Defendant is responsible for paying for the cost of serving the summons and complaint. While the cost of service of process was high in this case, the

inefficiencies in the work regarding service of process was caused wholly or partly by Defendant's belated refusal to accept service through counsel, as the parties had initially agreed. (*See* Dkt. No. 16 at 2.)

### 10. Mock Trial

At issue is whether Plaintiff can recover costs and fees for a mock trial. Federal courts have declined to draw a firm line concerning attorneys' fees for mock trials, moot courts, and other preparation techniques, instead analyzing if those activities were reasonable in the context of the particular case. *See, e.g.*, *United Steelworkers of America v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990) (holding a single moot court trial could be included in a reasonable fee award so long as the number of hours spent was reasonable). Here, the Court finds that the time and expense Plaintiff spent conducting a mock trial was reasonable in the circumstances of this case and declines to make any related reduction.

### 11. Associate Time

Defendant cites no legal authority, just the Wall Street Journal, in support of its claim that CCS should not be required to pay for legal work done by associates. (Dkt. No. 102 at 9-10.) The Court rejects this proposed reduction.

### 12. Westlaw Billing

The Court finds that Plaintiff's request for legal research litigation expenses in the amount of $4,381.64 is reasonable, sufficiently supported by its documentation, and recoverable.

### 13. USERRA Recovery

Defendant's reading of 38 U.S.C. §4323(h) as allowing private counsel to recover attorney fees under USERRA only if the Attorney General first passes on the merits of the underlying case is contradictory to the plain language of the statute, various court decisions and the Department of Labor's own regulations. *See, e.g.*, 20 CFR § 1002.310; *Fryer*, 758 F.Supp.2d at 35; *Serricchio*, 606 F.Supp.2d at 267. Plaintiff is entitled to attorneys' fees under 38 U.S.C. § 4323(h).

**14. Fees on Fees**

Defendant does not appear to contest that the hours expended by Plaintiff in briefing the fee issue is recoverable. (*See* Dkt. No. 102 at 11.) Rather, Defendant's main concern seems to be that Plaintiff not receive a multiplier on the work done on the fee petition. (*Id*. (arguing that an upward adjustment is not warranted for "fees on fees" work since recovery at that point was presumably certain and not contigent).)

Defendant need not be concerned. As discussed above in § B(2) of this Order, the multiplier has been calculated only with respect to the pre-judgment attorneys' fees. And, as a review of the billing records demonstrates that Plaintiff's lawyers did not begin work on the fee petition until after judgment was entered on May 3, 2012, Plaintiff is not receiving a multiplier on the fees work.

**C.    Conclusions as to Reasonable Attorneys' Fees, Costs, and Tax Offset**

The Court finds that virtually all of the fees and costs sought by plaintiff were reasonably incurred in this matter and should be recovered without deduction or penalty. The only exception to this is that certain of the tasks performed by Ms. Desiree Williams through May 16, 2012 appear to be clerical in nature. For that reason, the Court will assess a 30% reduction in the amount of fees recoverable for her work through that period.

In approving the lodestar figure proposed by Plaintiff, with one minor modification, the Court notes that the billing records submitted in support of the fee request specifically set forth the tasks that were performed, the time spent on the tasks, the person who performed the task, and the rates requested by that attorney or staff member. Similarly, the costs incurred were specifically detailed and explained, including amounts, dates of expenses, and the identity of the persons or entities paid.

In addition to the lodestar figure, the Court will award a 1.5 multiplier with respect to the pre-judgment fees reasonably attributable to Plaintiff's state law claims—calculated as half of the reasonable attorneys' fees through May 2, 2012— to account for the contingent nature of

1  success. As the amount of reasonable attorneys' fees through May 2, 2012 is $310,387.50, the
2  multiplier amount is $77,596.88.
3       Finally, as the Washington Law Against Discrimination allows for an additional amount
4  to be added to a verdict in employment discrimination cases to offset federal income tax
5  consequences, the Court awards $14,482.00 as an offset.

6  **III.   CONCLUSION**

7       **For the foregoing reasons, the Court orders that Plaintiff is AWARDED a total of**
8  **$416,144.40 in attorneys' fees; $26,625.86 in litigation expenses; and $14,482.00 to offset**
9  **adverse tax consequences.** The fees and expenses award is comprised of the following:
10       (1) attorneys' fees through May 2, 2012, in the amount of $310,387.50 (reflecting a 30%
11  reduction in the amount of fees Plaintiff requested for the work of Desiree Williams to account
12  for the clerical nature of certain tasks);
13       (2) a multiplier of 1.5 on half of the reasonable attorneys' fees incurred before judgment
14  was entered, which amounts to $77,596.88;
15       (3) attorneys' fees from May 3, 2012 to May 16, 2012, in the amount of $12,452.50
16  (reflecting a 30% reduction in the amount of fees Plaintiff requested for the work of Desiree
17  Williams to account for the clerical nature of certain tasks);
18       (4) attorneys' fees from May 17, 2012 to May 31, 2012, in the amount of $8,430.00;
19       (5) attorneys' fees from June 1, 2012 to June 11, 2012, in the amount of $7,277.50;
20       (6) litigation expenses through May 16, 2012, in the amount of $25,592.26;
21       (7) litigation expenses from May 17, 2012 to June 11, 2012, in the amount of $1,033.60.
22       DATED this 8th day of August 2012.

*[signature: John C. Coughenour]*

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER
PAGE - 13